MATTHEW J. RUGGLES (SBN 173052)
**RUGGLES LAW FIRM**
7940 CALIFORNIA AVENUE
FAIR OAKS, CA 95628
TEL: (916) 758-8058
FAX: (916) 758-8048
mruggles@ruggleslawfirm.com

ATTORNEY FOR PLAINTIFF
JOHN HATZIS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HATZIS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br>a Delaware corporation,<br><br>　　　　Defendant. | Case No. 2:17-CV-01645-JAM-KJN<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br>**1.  RETALIATION IN VIOLATION OF LABOR CODE SECTION 1102.5;**<br>**2.  RETALIATION IN VIOLATION OF LABOR CODE SECTION 6310; AND**<br>**3. RETALIATION IN VIOLATION OF PUBLIC POLICY**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JOHN HATZIS alleges as follows:

## NATURE OF ACTION

1.      Plaintiff JOHN HATZIS has been employed by Defendant FEDEX GROUND PACKAGE SYSTEM, INC. ("FEDEX") for more than a decade, during which time he has consistently exhibited excellent performance, loyalty, and the highest professional standards.  Mr. HATZIS began his career with the Company in 2006 as a part-time Service Manager, and has been consistently promoted throughout his tenure with the Company, and is now the District Manager, Contractor Relations.

2.      At the time of his promotion to District Manager, Contractor Relations in 2014, Mr. HATZIS was enjoying a highly-successful and promising career with FEDEX. Unfortunately, his treatment by the Company abruptly changed after Mr. HATZIS "blew the whistle" by reporting to the Company's management, and Gary Jordan, a series of health, safety, and integrity concerns and complaints involving his direct supervisor, Mr. John Abbott.  Since that time, Plaintiff JOHN HATZIS has experienced illegal harassment and retaliation from the Company, including Gary Jordan, all to the detriment and damage of Plaintiff, as described below.

## PARTIES

3.      Plaintiff JOHN HATZIS is a citizen of the State of California and at all relevant times has been a resident of Sacramento County.  Plaintiff is presently employed by FEDEX within Sacramento County.

4.      Defendant FEDEX GROUND PACKAGE SYSTEM, INC. is a Delaware corporation with its principal place of business in Moon Township, Pennsylvania.  At all relevant

times, Defendant FEDEX GROUND PACKAGE SYSTEM, INC. has conducted business throughout the country, including operations in and around Sacramento County.  At all relevant times, Defendant FEDEX GROUND PACKAGE SYSTEM, INC. employed Plaintiff JOHN HATZIS.

## **VENUE AND JURISDICTION**

5.    Venue lies in this Court pursuant to 28 U.S.C. sections 84(b), 1441(a), and 1446(a) as it is the District Court embracing the place where the State Court Action is pending. Assignment to the Eastern District of California, Sacramento Division is appropriate because this action originated in the Superior Court of the State of California for the County of Sacramento.

6.    This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1332(a). This action was removable pursuant to 28 U.S.C. section 1441(a), as this action involves citizens of different States; and the amount in controversy established by Plaintiff's claims exceeds $75,000, exclusive of interests and costs.

7.    Within the time provided by law, Plaintiff JOHN HATZIS filed a complaint with the Department of Fair Employment and Housing and received a Right-to-Sue letter in response. Plaintiff now timely files this action.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

8.    In 2014, while interacting with his new direct supervisor, John Abbott, Mr. HATZIS (a former EMS technician and Firefighter) observed signs of possible drug and alcohol abuse by Mr. Abbott. For example, Mr. HATZIS (and others) witnessed Mr. Abbott drinking to the point of severe intoxication at work and work-related events on multiple occasions.  At one

work-related dinner, Mr. Abbott became so intoxicated that he vomited in front of his co-workers. Mr. Abbott had also informed Mr. HATZIS that he was taking prescription "pain killers" for his knees.   Combined with Mr. Abbott's daily behavior -- which often included slurred speech, memory impairment, incoherent phone calls, and a tendency to disappear for extended periods of time without communication -- Mr. HATZIS was concerned and suspected that Mr. Abbott might have a serious substance abuse problem.  If, indeed, Mr. Abbott was engaging in substance abuse, this misconduct and violation of FEDEX's internal policies had potentially serious ramifications for the safety of the workplace and the public, given that Mr. Abbott oversaw a large department, traveled and drove with employees, and had significant responsibilities for ensuring contractor compliance with the Company's standards (including health, safety, and other legal requirements) and for maintaining the safety and integrity of the Company's contractor model.

9.   Plaintiff JOHN HATZIS understood and believed that his internal complaints to the Company and to Gary Jordan directly implicated (and endangered) the health and safety of the workplace because John Abbott's intoxicated behavior at work presented a safety danger to Mr. Abbott himself, who periodically worked around large trucks and other vehicles as part of his job duties and responsibilities at Defendant FEDEX GROUND PACKAGE SYSTEM, INC. Additionally, John Abbott's intoxicated behavior at work presented a safety danger to Mr. Abbott's co-workers (including Plaintiff) who periodically were required to travel by automobile with Mr. Abbott, and driving while intoxicated is a serious felony, not to mention an express violation of the Company's internal policies and procedures.   Even when Mr. Abbott's intoxicated behavior did not present a direct and immediate physical threat to himself and his co-

workers, Mr. Abbott's impaired judgment as a result of being almost always intoxicated at work presented a health and safety risk to the Company because Mr. Abbott was responsible for ensuring contractor compliance with the Company's health and safety standards (and other legal requirements).   Mr. Abbott also was a danger to the public because he frequently operated a vehicle rented on behalf of, and insured by, Defendant FEDEX GROUND PACKAGE SYSTEM, INC. as part of his job duties.   Additionally, as part of his job duties and responsibilities, Mr. Abbott periodically was required to perform Dock operation walks and station assessments, requiring Mr. Abbott to work around (and inspect) moving industrial machinery such as tuggers, belt lines with large conveyer belts, and other machinery.   Mr. Abbott could not competently perform those duties, and his failure to do so presented an opportunity for the standards to be ignored, endangering the employees and contractors at Defendant FEDEX GROUND PACKAGE SYSTEM, INC., as well as the general public because thousands of the Company's (and contractors') commercial trucks travel the roads in every town, every city and every state in the country.

10.    Given Mr. HATZIS'S concerns about Mr. Abbott (which were shared by other employees), he spoke with Gary Jordan (Managing Director, Contractor Relations) at the Southern California, Los Angeles Metro Joint SRM meetings in late 2014. Mr. HATZIS told Gary Jordan what he had observed with respect to Mr. Abbott's suspected drug and alcohol abuse at work and work-related events, and how Mr. Abbott's behavior was creating health and safety issues in Plaintiff's district. Mr. HATZIS implored Gary Jordan to investigate the troubling and dangerous situation that Mr. Abbott's behavior created at work.   In response to Mr. HATZIS'

expressed concerns, Gary Jordan seemed generally uninterested, told Mr. HATZIS he should just "relax and get a drink," and responded flatly that he would "look into it."

11.     Despite Gary Jordan's promise to "look into" the serious issues raised by Mr. HATZIS, the Company and Gary Jordan did not investigate or take any remedial action.  In fact, over the next year, Mr. Abbott's apparent substance abuse became even more severe, and the Company and Gary Jordan either did not notice, or did not care.  In addition to continuing to engage in the behavior described above (and sometimes, even worse), Mr. Abbott stopped traveling with Mr. HATZIS almost entirely and Mr. Abbott's overall lack of availability became even more acute, causing significant disruptions in the workplace, and placing artificial obstacles in the path of Mr. HATZIS' good faith effort to perform his job duties in an excellent manner.

12.     In 2016, Mr. Abbott told Mr. HATZIS that his regular doctor had refused to continue prescribing him narcotic painkillers, and that Mr. Abbott had to "shop around" for another doctor in order to fraudulently obtain and abuse narcotic painkillers.  Mr. Abbott's substance abuse became so severe during 2016 that several District Managers at the Company attempted to convince him to enter a rehabilitation center, to no avail.  Simply put, Mr. Abbott's substance abuse problems and the many problems it caused at work were obvious.

13.     In light of the continuation and worsening of Mr. Abbott's substance abuse, Mr. HATZIS again spoke with Gary Jordan in late 2015 at the annual SRM meeting in Long Beach. Mr. HATZIS provided Gary Jordan with details concerning Mr. Abbott's suspected substance abuse and how it was adversely affecting the district and region, was a health and safety hazard to FEDEX employees, contractors and the public, and was compromising the Company's contractor model. Mr. HATZIS explained to Gary Jordan that Mr. Abbott's issues were now

escalating and had become even worse during the past year. Once again, Gary Jordan agreed to "look into" the matter. Once again, however, neither Gary Jordan nor the Company took any prompt action to investigate or address Mr. HATZIS' concerns. Neither Mr. HATZIS nor anyone else in Mr. Abbott's district were contacted by the Company to be interviewed about Mr. Abbott, and there was no indication that any corporate investigation of Mr. Abbott was ongoing, or even commenced.

14.     In or about April 2016, Mr. HATZIS asked Gary Jordan whether he had looked into the concerns about Mr. Abbott's substance abuse. Mr. HATZIS informed Gary Jordan that Mr. Abbott was "going down a bad rabbit hole," that even his skin tone was changing, and that he was exhibiting the behavior and characteristics of a prescription drug abuser. Mr. HATZIS again complained that Mr. Abbott's behavior and lack of availability was creating health, safety, integrity, and credibility issues at work and with the public. Gary Jordan, who by now was visibly annoyed that Mr. HATZIS continued to raise the issue, again promised that he would look into it. When Gary Jordan once again failed to look into the issue, Mr. HATZIS complained to two separate individuals with the Company's Human Resources Department, who did not take his complaints seriously or conduct a good faith investigation.

## FEDEX AND JORDAN RETALIATE AGAINST PLAINTIFF

15.     Despite the fact that Mr. HATZIS' actions in reporting Mr. Abbott's substance abuse were completely appropriate (and indeed required) under the Company's policy, and constituted protected whistleblower activity under California Labor Code sections 1102.5 and 6310, as well as 29 C.F.R. 1977.3, the Company unlawfully retaliated against Mr. HATZIS

because he persisted in raising these issues with his supervisors. The retaliation took the form of a campaign of harassment and other adverse employment actions by Gary Jordan, as well as James Krappa and Marsha Obenauf, all of whom had close personal and/or business relationships with Mr. Abbott and sought to protect him from the consequences of his behavior.

16.     In retaliation for his protected activity described above, Gary Jordan passed Mr. HATZIS over for a promotion to Senior Regional Manager, Contractor Relations, and gave the position to a candidate who was less qualified. When pressed for an explanation by Plaintiff, Gary Jordan was unable to provide any detailed justification for his decision, stating only that the candidate was selected based on his "soft skills," without any further explanation.  Plaintiff JOHN HATZIS alleges that he was more qualified than the candidate selected for promotion, and that the decision to not select Mr. HATZIS for the position was an adverse employment action taken by the Company at the direction of Gary Jordan.

17.     Additionally, Gary Jordan sought to take material job responsibilities away from Mr. HATZIS in retaliation for Mr. HATZIS' protected activity.  Among other things, Gary Jordan conspired with Mr. Krappa and Ms. Obenauf to appropriate a sophisticated investigation training program and related work product that Mr. HATZIS had created and developed for the Company, and eventually excluded Mr. HATZIS from the program entirely in favor of Ms. Obenauf (who had never conducted an investigation), all to Mr. HATZIS' professional detriment.  Specifically, although the training program was the property of the Company, Gary Jordan's actions left Mr. HATZIS without the appropriate recognition at work that ordinarily would follow the successful creation and implementation of the investigation program.  In other words, Gary Jordan was

retaliating against Plaintiff by improperly taking credit for Plaintiff's work product, and giving the credit to others or taking it for himself.

18.     Gary Jordan, Mr. Krappa, and Ms. Obenauf worked together to sabotage Mr. HATZIS' work product to embarrass him and cause others to question his capability. On one occasion, Ms. Obenauf intentionally removed and reordered Mr. HATZIS' presentation slides right before a presentation without his knowledge for the purpose of humiliating him in front of his peers. As a result, Mr. HATZIS was professionally embarrassed and personally distressed.

19.     Mr. Krappa and Ms. Obenauf (with the knowledge and participation of Gary Jordan), provided false and slanderous information to Gary Jordan and Mr. Sean O'Connor (Vice President Contractor Relations) regarding Mr. HATZIS' work on pending investigations to harm Mr. HATZIS' standing at the Company and injure his professional reputation.

20.     Ms. Obenauf behaved unprofessionally and inappropriately during Mr. HATZIS' seminar presentations in order to harass him and impede his work. When Mr. HATZIS complained to Gary Jordan, JORDAN agreed to observe one of the seminars himself. However, rather than objectively looking into the situation, Gary Jordan spent the seminar publicly "cuddling" with Ms. Obenauf, including, at one point, resting his head on Ms. Obenauf's shoulder in the middle of Mr. HATZIS' seminar.  By engaging in this public act of misconduct and unprofessional behavior, Gary Jordan retaliated against Mr. HATZIS by showing his co-workers that Mr. HATZIS' information and presentation was worthless and unimportant.

21.     The conduct of Gary Jordan, Mr. Krappa, and Ms. Obenauf created a hostile working environment and caused Mr. HATZIS extreme emotional distress and anxiety. Mr.

HATZIS complained to Gary Jordan about the harassment on numerous occasions, but Gary Jordan took no action to investigate or address Mr. HATZIS' complaints. Indeed, when Mr. HATZIS discussed the situation with John Abbott, Mr. Abbott conceded that James Krappa was "out to get" Mr. HATZIS, and cautioned Mr. HATZIS to "be careful," hinting that the Company was likely to retaliate against Mr. HATZIS.

22.     As a result of Gary Jordan's inaction on Plaintiff's expressed concerns, as well as Gary Jordan's involvement in the campaign of harassment against him, Mr. HATZIS filed several complaints with Human Resources in accordance with the Company's policy.  However, the Human Resources Department failed to adequately (if at all) promptly investigate or take remedial action with respect to Mr. HATZIS' concerns.  Notably, during his discussions with both Gary Jordan and Human Resources, Mr. HATZIS expressly stated that he was being subjected to a "hostile working environment" based on his protected activity, and believed he was being targeted for harassment and was passed over for promotion in retaliation for bringing Mr. Abbott's substance abuse to the attention of Gary Jordan and others in management of the Company

23.     Rather than addressing Mr. HATZIS' complaints, the Company continued engaging in retaliatory actions against him.  For example, in January 2017, the Company attempted to interfere with Mr. HATZIS' legally-protected leave under the FMLA and California Family Rights Act by threatening to deny him paid vacation time if he did not submit certain reports — reports that he had already submitted prior to taking leave. As a result, Mr. HATZIS was forced to log into the Company network system while on protected leave in order to re-

submit work product that he had already provided. Also, in February of 2017, Mr. HATZIS had planned to end his bonding leave in order to conduct a training session, and then resume his leave after conducting the training. However, contrary to law, he was falsely advised by the Company that he was not permitted to resume his leave once he returned to perform any work for the Company. Consequently, Mr. HATZIS was forced to cancel his airline ticket and other travel reservations, only to be told after canceling his plans that he was, in fact, permitted to conduct the training without losing his leave rights.

24. Most recently, the Company abruptly stopped paying Mr. HATZIS his salary, despite the fact that he remains actively employed with the Company. When Mr. HATZIS inquired with the Company's Leave of Absence Coordinator, he was informed that someone at the Company had mysteriously accessed the payroll system and discontinued his pay, in clear violation of California law and Company policy. Thus, Mr. HATZIS was not paid as scheduled on March 1, 2017 for reasons unknown, and has been advised his employment status has been changed. These actions constitute further violations of his right to wages under federal and California law and were undertaken in retaliation for his protected activity.

25. In addition to the Company's failure to stop the unlawful retaliation being perpetrated against Mr. HATZIS, the Company's inaction contributed to the continued deterioration of John Abbott's medical condition, to the point that Mr. Abbott hospitalized in January 2017, and passed away in March 2017. Had the Company investigated MR. HATZIS's complaints as it was obligated to do under the law and its own policies, Mr. Abbott's tragic death may have been prevented.

26.     After Mr. Abbot's passing, his position was advertised internally on the Company's intranet, which was accessible only by employees through the Company's internal systems.  During this time, MR. HATZIS, who had returned from leave, was unlawfully denied access to his phone and email, <u>for an entire month</u>, although he reported to work diligently every day.  This delay in turning on access for this length of time after a protected leave of absence is unprecedented in MR. HATZIS's department.   While he worked with the Company's IT department every single day to resolve the issue, IT informed MR. HATZIS on several occasions that Gary Jordan was responsible for his inability to work or access Company systems.  Upon information and belief, Plaintiff alleges that Gary Jordan sabotaged Mr. HATZIS's ability to perform his job and apply for Mr. Abbot's position, about which Mr. HATZIS ultimately found out about through colleagues, who urged him to apply.  Mr. HATZIS applied directly to Human Resources and Gary Jordan for the position.  Plaintiff was invited for an interview, but it was apparent that the interview was a sham, and the position was given to someone less qualified, in retaliation for Mr. HATZIS's protected activity.

27.     As further retaliation against Mr. HATZIS, his entire team has been penalized—in that every single one of his subordinates who has applied for a promotion has not received it, because of their association with Plaintiff, and the promotions are being awarded to lesser qualified candidates.

28.     The retaliation by Defendants continued against Mr. HATZIS in public ways meant to humiliate him, sabotage his career and cause him emotional distress.  For example, on or about June 6, 2017, at the Department's District Manager yearly meeting, someone else was awarded a Business Excellence Award for Plaintiff's project on investigation training.  At the same meeting, everyone with more than ten years of service was publicly recognized; while Mr. HATZIS has been with the Company more than 10 years, he was the only one not to receive recognition at that forum for his decade of service to FEDEX.  HATZIS alleges that these actions were taken by Defendants as harassment and retaliation for Plaintiff's protected activity.

### THE COMPANY'S ACTIONS AGAINST PLAINTIFF
### <u>VIOLATE ITS OWN POLICIES</u>

29.     FEDEX also blatantly violated the Company's Code of Business Conduct and Ethics ("Code of Conduct" or "the Code"), as well as other corporate policies.  The Code of Conduct, which is signed by FedEx Chairman and CEO Frederick W. Smith, is replete with references to the Company's purported commitment to observe the highest legal and ethical standards, to act with integrity, and to ensure a safe and respectful workplace. The Code of Conduct not only encourages, but places an *affirmative* obligation on its employees to report any situations that might come into conflict with the Company's rules, policies, and ethical standards. Furthermore, the Code assures employees that they are free to come forward <u>without</u> <u>fear</u> <u>of</u> <u>retaliation</u>.  Indeed, the Code contains at least a half-dozen explicit references to the Company's anti-retaliation policies, including, for example, the following unequivocal statement:

**"No one who reports a known or suspected violation in good faith will be subject to retaliation, or in the case of an employee, adverse employment action**." (Code of Conduct at p. 47.)

30.      According to the Code of Conduct, FedEx is "committed to providing a safe, healthy, and alcohol- and drug-free workplace." The Code further states that "Safety is our first consideration in all operations," and that "FedEx will not permit any retaliation against employees who raise concerns in good faith". Indeed, the Code addresses the very situation encountered by Mr. HATZIS that led to his supervisors' retaliatory actions:

"<u>Question</u>:      I think my boss has a drinking problem that is interfering with work in my area. What can I do? I really want to help.

<u>Answer</u>:      You have an obligation to report your suspicions to your boss's manager or to your company's human resources department. As a provider of transportation services, it is crucial to employee and public safety that all FedEx workplaces be entirely free of alcohol and prohibited drugs. By reporting your suspicions now, you not only fulfill your duty to FedEx, but you may also potentially be helping your boss come to terms with a serious problem."

(Code of Conduct at p. 14.)

31.      In addition to the Code of Conduct, other Company policy documents and statements affirm and re-affirm the Company's commitments to non-retaliation, safety, and a drug- and alcohol-free workplace, including, *inter alia*:

a)      The **Acceptable Conduct Policy** states that violating the Company's Drug and Alcohol-Free Workplace policy, as well as failing to report such a violation, constitutes "inappropriate and unacceptable conduct," and

---

FIRST AMENDED COMPLAINT FOR DAMAGES

14

assures employees that "[a]nyone who reports in good faith actual or suspected violations will be protected from retaliation."

b)     The **Anti-Harassment and Anti-Discrimination Policy** "encourages employees to come forward without fear of retaliation if they are aware of potential policy violations through direct involvement or as an observer," and states that "FedEx Ground prohibits retaliation ... for alleging in good faith a violation of FedEx Ground policy or federal, state, or local law."

c)     The policy document entitled "**Maintaining the Integrity of the FedEx Brand**" states "When faced with a situation where you believe our corporate values or the law may be in question, we urge you to speak up.... FedEx will not tolerate retaliation against any employee who makes such a report."

d)     The policy document entitled "**Fedex Maintains A Tobacco, Alcohol, And Drug-Free Workplace**" provides that "FedEx Ground remains committed to maintaining a tobacco, alcohol, and drug-free workplace in the interest of employee and public safety."

32.     Taken together, the above corporate policies, which acknowledge that substance abuse is a vital health and safety issue for both employees and the public, and which provide a guarantee of non-retaliation to employees who report such issues, constitute an implied-in-fact contractual obligation on the part of FEDEX— an obligation that the company has violated and continues to violate by retaliating against Mr. HATZIS.  *See, e.g.,* Scott v. Pacific Gas & Electric Co., 11 Cal. 4th 454 (1995); Kerr v. Rose, 216 Cal. App. 3d 1551 (1990).

## FIRST CAUSE OF ACTION
(Retaliation in Violation of California Labor Code section 1102.5)
(Against Defendant FEDEX GROUND PACKAGE SYSTEM, INC.)

35.    As a first, separate, and distinct cause of action, Plaintiff JOHN HATZIS complains about all Defendants, and re-alleges all of the allegations in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

36.    In doing the things herein alleged, and as otherwise to be proven at trial, Defendant FEDEX GROUND PACKAGE SYSTEM, INC. violated Labor Code section 1102.5, which provides, in part, that:

(a)  An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to … to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, … if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

(b)   An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information … to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance … if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

(d)   An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.

37.     By retaliating against Plaintiff for asserting his statutory right to complain about health and safety violations pursuant to California Labor Code section 6310 and 29 C.F.R. 1977(c) involving his former supervisor John Abbott, Defendant violated Labor Code 1102.5(d).

38.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including, but not limited to, lost past and future wages and benefits and mental anguish and emotional suffering, all in an amount to be proven at trial and in excess of the jurisdictional minimum of this court.

39.     Pursuant to Labor Code section 1102.5(f), in addition to other available penalties, an employer that is corporation is liable for a civil penalty not exceeding ten thousand dollars ($10,000.00) for each violation of Labor Code section 1102.5.

40.     Pursuant to Code of Civil Procedure section 1021.5, in addition to his other damages and remedies, Plaintiff JOHN HATZIS is entitled to an award of reasonable attorney's fees.

41.     In doing the things herein alleged, Defendant is guilty of oppression, fraud and malice in that the Company, among other things, acted with a willful and conscious disregard for Plaintiff's rights, health and safety, insofar as the things alleged were attributable to employees of Defendant, said employees were employed by Defendant with advance knowledge of the unfitness of the employees and/or they were employee with a conscious disregard for the rights of others and/or Defendant authorized or ratified the wrongful conduct and/or there was advance knowledge, conscious disregard, authorization, ratification or act of oppression, fraud or malic

on the part of an officer, director or managing agent of Defendant all entitling Plaintiff to the recovery of exemplary and punitive damages.

## SECOND CAUSE OF ACTION
(Retaliation in Violation of Labor Code section 6310)
(Against Defendant FEDEX GROUND PACKAGE SYSTEM, INC.)

42.     As a second, separate, and distinct cause of action, Plaintiff JOHN HATZIS complains about all Defendant FEDEX GROUND PACKAGE SYSTEM, INC., and re-alleges all of the allegations in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

43.     In doing the things herein alleged, and as otherwise to be proven at trial, Defendant FEDEX GROUND PACKAGE SYSTEM, INC. violated Labor Code section 6310, which provides, in part, that:

 (b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to … his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment, or has participated in an employer-employee occupational health and safety committee, shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

44.     By retaliating against Plaintiff for asserting his statutory right to complain about unsafe working conditions and unsafe work practices involving his former supervisor John Abbott, Defendant violated Labor Code section 6310(b).

45.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including, but not limited to, lost past and future wages and benefits and mental anguish and emotional suffering, all in an amount to be proven at trial and in excess of the jurisdictional minimum of this court.

46.     Pursuant to Code of Civil Procedure section 1021.5, in addition to his other damages and remedies, Plaintiff JOHN HATZIS is entitled to an award of reasonable attorney's fees.

47.     In doing the things herein alleged, Defendant is guilty of oppression, fraud and malice in that the Company, among other things, acted with a willful and conscious disregard for Plaintiff's rights, health and safety, insofar as the things alleged were attributable to employees of Defendant, said employees were employed by Defendant with advance knowledge of the unfitness of the employees and/or they were employee with a conscious disregard for the rights of others and/or Defendant authorized or ratified the wrongful conduct and/or there was advance knowledge, conscious disregard, authorization, ratification or act of oppression, fraud or malic on the part of an officer, director or managing agent of Defendant all entitling Plaintiff to the recovery of exemplary and punitive damages.

### THIRD CAUSE OF ACTION
(Retaliation in Violation of Public Policy)
(Against Defendant FEDEX GROUND PACKAGE SYSTEM, INC.)

48.     As a third, separate, and distinct cause of action, Plaintiff JOHN HATZIS complains about Defendant FEDEX GROUND PACKAGE SYSTEM, INC. and re-alleges all of the allegations in the Complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

49.     The public policy of the State of California, as codified, expressed and mandated in Labor Code sections 1102.5(d) and 6310(b), as well as 29 C.F.R. 1977(c) and other applicable laws is to prohibit employers from retaliating or discriminating in any manner against employees who make reasonable and good faith complaints to the employer regarding any potential violation of federal, state or local health and safety regulations, or of unsafe working conditions or work practices in his or her place of employment.

50.     By retaliating against Plaintiff for asserting his statutory right to complain about health and safety violations, as well as unsafe working conditions or work practices involving his former supervisor John Abbott, Defendant violated the public policy of the State of California.

51.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including, but not limited to, lost past and future wages and benefits and mental anguish and emotional suffering, all in an amount to be proven at trial and in excess of the jurisdictional minimum of this court.

52.     Pursuant to Code of Civil Procedure section 1021.5, in addition to his other damages and remedies, Plaintiff JOHN HATZIS is entitled to an award of reasonable attorney's fees.

53.     In doing the things herein alleged, Defendant is guilty of oppression, fraud and malice in that the Company, among other things, acted with a willful and conscious disregard for Plaintiff's rights, health and safety, insofar as the things alleged were attributable to employees of Defendant, said employees were employed by Defendant with advance knowledge of the unfitness of the employees and/or they were employed with a conscious disregard for the rights of others and/or Defendant authorized or ratified the wrongful conduct and/or there was advance knowledge, conscious disregard, authorization, ratification or act of oppression, fraud or malic on the part of an officer, director or managing agent of Defendant all entitling Plaintiff to the recovery of exemplary and punitive damages.

## **PRAYER**

WHEREFORE, Plaintiff JOHN HATZIS prays for judgment against Defendant as follows:

1.     For money judgment for mental pain, anguish and emotional distress, according to proof;

2.     For general, presumed and special damages based upon damages to Plaintiff's professional and personal reputation;

3.     For a money judgment representing compensatory damages including lost past and future wages and all other sums of money, including employment benefits,

together with interest on said amounts, and any other economic injury to Plaintiff, according to proof;

4.   For an award of punitive damages against any and/or all Defendant(s);

5.   For costs of suit, including attorney's fees under any applicable statutory basis;

6.   For prejudgment interest, according to statute;

7.   For costs of suit according to statute; and

8.   For any other relief that is just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff JOHN HATZIS demands a trial of all issues by jury.

DATED:  November 29, 2017                    RUGGLES LAW FIRM


                                             By: */s/  Matthew J. Ruggles*
                                                  MATTHEW J. RUGGLES
                                                  Attorney for Plaintiff
                                                  JOHN HATZIS